IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAURIE S. HENDERSON, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting )<br>Commissioner of Social Security, )<br>)<br>    Defendant. ) | Case No. CIV-22-765-AMG |

## MEMORANDUM OPINION AND ORDER

Laurie S. Henderson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner answered the Complaint and filed the Administrative Record ("AR") (Docs. 9, 10), and the parties have fully briefed the issues. (Docs. 14, 20, 21).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 15, 16). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.  **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct.

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History

Plaintiff filed an application for DIB on December 10, 2019, alleging a disability onset date of September 1, 2019. (AR, at 92, 94, 245). The SSA denied the application initially and on reconsideration. (*Id*. at 117-21, 123-28). Then an administrative hearing was held on December 9, 2021. (*Id*. at 40-74). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 10-28). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III. The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 27, 2019, the amended alleged onset date. (AR, at 12). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, polyarthritis, plantar fasciitis with calcaneal spur, and right trochanteric bursitis.[3] (*Id.* at 13). At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id.* at 18). The ALJ then determined that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs." (*Id.* at 20). Then, at Step Four, the ALJ concluded that Plaintiff was able to perform her past relevant work as a receptionist. (*Id.* at 27). Thus, the ALJ found that Claimant had not been under a disability since November 27, 2019. (*Id.* at 28).

## IV. Claim Presented for Judicial Review

Plaintiff contends the ALJ did not properly analyze Dr. Melinda Allen's medical opinion. (Doc. 14, at 8-15; Doc. 21, at 1-4). In response, the Commissioner contends that the ALJ reasonably considered Dr. Allen's opinion and that the record supports the ALJ's

---

[3] The ALJ also found Plaintiff had the non-severe impairments of depression, anxiety, hypertension, hyperlipidemia, seasonal allergies, hammer toes, diverticulosis, carpal tunnel syndrome, and migraine headaches. (AR, at 13). Further, the ALJ found Plaintiff's reports of fibromyalgia, neuropathy, and Sjogren's syndrome did not amount to medically determinable impairments and, alternatively, were non-severe. (*Id.* at 17).

analysis. (Doc. 20, at 8-15). The Court finds Plaintiff's contention of error is without merit.

V.  **The ALJ Did Not Err in Her Consideration of Dr. Allen's Opinion.**

An ALJ is required to evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.") "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions. *Id.* § 404.1513(a)(2). An ALJ considers medical opinions using five factors: (1) how much the opinion is supported by objective medical evidence and explanation; (2) the consistency of the opinion with evidence from other sources in the claim; (3) the medical source's relationship with the claimant; (4) the specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion. *Id.* § 404.1520c(a), (c)(1)-(5). The ALJ must articulate how persuasive he or she finds a medical opinion. *Id.* § 404.1520c(b). In doing so, the ALJ is required to explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 404.1520c(b)(2). But, the ALJ is not required to explain how he or she considered the remaining factors. *Id.*

On September 11, 2021, Dr. Allen completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form for Plaintiff. (AR, at 655-57). Dr. Allen opined that Plaintiff:

- can stand and/or walk for less than thirty minutes at a time and between two and four hours total in an eight-hour workday;

- can sit for less than thirty minutes at a time and between four and six hours total in an eight-hour workday;

- can occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds;

- can occasionally reach in all directions with her right and left hands;

- likely needed to adjust between a standing and sitting position every fifteen minutes;

- needed to lie down for one hour both in the morning and afternoon;

- cannot perform work on a sustained and continuing basis;

- can only perform simple tasks because her pain or medications affected her ability to concentrate; and

- needed to be absent from work three or more times per month.

(*Id.*) The ALJ summarized Dr. Allen's opinion and found:

> I do not find this opinion by Dr. Allen to be persuasive. Dr. Allen does not explain her opinion with any citation to objective findings. The opinion of Dr. Allen is not consistent with or supported by her own examination findings of [Plaintiff] at the time she opined. On examination, Dr. Allen noted [Plaintiff] was in no acute distress and had normal movement of all extremities with only some tenderness and positive straight leg raise [AR, at 775]. However, on other examination dates, when [Plaintiff] was not seeking to have the disability form filled out [AR, at 776], Dr. Allen either documented an entirely normal physical examination or did no musculoskeletal or neurological examination at all [AR, at 780, 784, 790, 794]. Moreover, a residual functional capacity is the most one can do, not the least. Thus, this opinion is vague because it indicates that "at least" and then basically gives a range of hours the claimant can sit and stand/walk. I note, Dr. Allen's treatment records show she did not impose any such restrictions when she saw [Plaintiff], but in fact, Dr. Allen instructed [Plaintiff] to remain active. Moreover, other physicians, notably the

>> physiatrist Dr. Stone, advised aerobic activity and regular daily walking.
>> [AR, at 846-95, 1013-67].

(*Id.* at 25).

The ALJ met her obligation under the regulations – she articulated that she found the opinion was not persuasive and explained how she considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(b)(2), (c)(1)-(2). Plaintiff, however, contends the ALJ's explanation "was not legitimate where it failed to adequately address the extent to which Dr. Allen's opinions were supported by and consistent with the evidence as a whole." (Doc. 14, at 12). In other words, Plaintiff effectively suggests the ALJ's reasoning was not supported by substantial evidence.

Plaintiff contends the ALJ's discussion of supportability was "flawed in several respects." (*Id.*) First, Plaintiff contends that because the Medical Source Statement form that Dr. Allen completed did not request any citations to objective findings, the ALJ should not have considered the lack of such citations in finding Dr. Allen's opinion unpersuasive. (*Id.*) But the operative regulation requires an ALJ to consider an opinion's supportability, which means "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). That the form completed by Dr. Allen did not solicit such support does not alter the ALJ's duty. Thus, there is no error in the ALJ's consideration of this factor.

Plaintiff next asserts the ALJ selectively considered findings from Dr. Allen's examinations of Plaintiff. (Doc. 14, at 12) (citing AR, at 775). Although the "ALJ is not

required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, "it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

The physical examination notes from Plaintiff's September 3, 2021, visit to Dr. Allen note, "Joints, Bones, and Muscles: normal movement of all extremities and **tenderness; abnormal lordosis**.  Extremities: no cyanosis, edema, or varicosities; **SLR right side. With FABER TTP at right piriformis area. And right lower paraspinal area. With some nodular changes to that area.**"  (AR, at 775) (emphasis in original).  Plaintiff correctly notes the ALJ did not explicitly reference the findings of abnormal lumbar lordosis, Faber testing, tenderness, and nodular changes.  (Doc. 14, at 12; AR, at 25).  But the ALJ considered other findings favorable to Plaintiff contained in the same report – "some tenderness and positive straight leg raise" – and it is unclear how the remaining evidence is significantly probative in light of that discussion.  (AR, at 25).

Additionally, Plaintiff asserts the ALJ did not reference "Dr. Allen's . . . findings of sacroiliac joint tenderness in July and September 2020[,] . . . [Plaintiff's] reports of fairly consistent significant back pain, including when attempting to exercise and with treatment providing only temporary relief, . . . [and notations of] significant difficulties with standing, walking, sitting, and performing various other activities."  (Doc. 14, at 12-13) (citing AR, at 603, 775, 784, 789, 793, 798, 803, 816).  The ALJ, however, either summarized or

9

referenced each of the records Plaintiff cites, specifically referencing prescription medication for back pain, directives to exercise, reports of tenderness, and positive straight leg raise results. (AR, at 22-23, 25). Thus, it is clear the ALJ considered all of Dr. Allen's findings when addressing Dr. Allen's opinion. *See Manzanares v. Kijakazi*, 2022 WL 4129411, at *5 (D.N.M. Sept. 12, 2022) ("[T]he Court is satisfied that [the ALJ] did not 'cherry pick' evidence and appropriately considered evidence that tended to contradict her ultimate conclusion regarding the consistency of medical opinions" where the ALJ discussed "various evidence of abnormal mental findings . . . in an earlier portion of her opinion.").

Plaintiff also contends the ALJ disregarded a substantial amount of evidence consistent with Dr. Allen's opinions, including Plaintiff's MRI scans, records from Dr. Gordon Laird which contained "fairly consistent references to ongoing symptoms despite some help from medications and/or injections," Dr. Chris Codding's February 2021 examination, and various findings from Dr. Jonathan Stone. (Doc. 14, at 13-15). However, the ALJ in fact summarized Plaintiff's MRI scans; treatment notes from Plaintiff's visits to Dr. Laird between 2019 and 2021, specifically noting Plaintiff's reports of back pain and the prescribed treatment; the record from Plaintiff's February 2021 examination by Dr. Codding; and records from Dr. Stone, including references to steroid injections, lumbar spine tenderness, antalgic gait, and poor sitting posture with slumped shoulders. (AR, at 22-23). Thus, it is clear the ALJ did not ignore the evidence Plaintiff contends is favorable to her claim. *See Manzanares*, 2022 WL 4129411, at *5.

Plaintiff further "disputes the ALJ's assertion that particular significance should be attached to Dr. Allen's failure to include similar work-related functional limitations in her office notes when she was neither working nor being seen for social security purposes." (Doc. 14, at 13) (citing AR, at 601-605, 772-804, 816-818). In support, Plaintiff cites *Ford v. Apfel*, in which the Tenth Circuit found "the absence of . . . limitations in the medical record mean[t] nothing" where "none of claimant's physicians expressly placed limitations on claimant's abilities to walk, stand, or sit, he was not working during 1992-95 and none of the treating physicians were evaluating him for social security disability purposes." 2000 WL 702752, at *4 (10th Cir. 2000). But here, the ALJ did not rely solely on the absence of restrictions in the medical records in finding Dr. Allen's opinion not persuasive – she also noted that "Dr. Allen instructed [Plaintiff] to remain active" and other physicians also encouraged physical activity. (AR, at 25). Plaintiff counters that she "strongly disagrees" that Dr. Allen and Dr. Stone's recommendations for Plaintiff "to stay active somehow constituted a sufficient evaluation of the extent to which Dr. Allen's opinions were consistent with the other evidence of record." (Doc. 14, at 13). Plaintiff contends the ALJ "fail[ed] to acknowledge [Plaintiff's] March 2021 comments regarding pain-related exercise difficulties" (*id.*) (citing AR, at 789), and notes that "the twenty minutes of daily walking recommended by Dr. Stone in October 2021 would still not violate the significant limitations imposed by Dr. Allen" (*id.*) (citing AR, at 655, 1039). However, the ALJ's rationale in crediting the doctors' instructions to remain active over Dr. Allen's physical restrictions on the disability form is sufficient to meet the "substantial evidence" test, and the Court cannot reweigh the evidence. *Vigil*, 805 F.3d at 1201.

11

Finally Plaintiff "disagree[s]" with the ALJ's finding that Dr. Allen's opinion was vague. (Doc. 14, at 13). Dr. Allen found Plaintiff could stand and/or walk "at least 2 hours, but less than 4 hours in an 8-hour workday" and sit "at least 4 hours, but less than 6 hours in an 8-hour workday." (AR, at 655). The ALJ found this opinion vague because Dr. Allen used the phrase "at least" to describe how many hours Plaintiff could sit and stand in a workday, and the language is inconsistent with the definition of the RFC, which "is the most one can do." (*Id.* at 25). To the extent the ALJ's finding that the opinion is vague is not supported by substantial evidence, it is not reversable error because the ALJ gave other good reasons for finding Dr. Allen's opinion not persuasive. *See Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (holding even if the reason given by the ALJ for rejecting a physician's opinion "was improper, the other reasons the ALJ gave were more than sufficient for rejecting [the] opinion").

## VI.   Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner.

**SO ORDERED** this 24th day of April, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE